IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YOURWAY TRANSPORT, INC., *Plaintiff,* v. SUNOVIAN PHARMACEUTICALS, INC., *Defendant.* | CIVIL ACTION NO. 18-4363 |

**PAPPERT, J.**                                                                 April 11, 2019

## **MEMORANDUM**

Yourway Transport sued Sunovion Pharmaceuticals for breach of contract and unjust enrichment after Sunovion allegedly failed to pay Yourway for its courier services. Sunovion moves to dismiss the unjust enrichment claim and limit the amount of damages recoverable. The Court denies the Motion for the reasons that follow.

I

Yourway entered a Master Services Agreement to provide courier services to Sunovion on July 27, 2017. (Compl. ¶ 6, ECF No. 1); *see also* (Compl. Ex. A ("MSA") 1). The MSA, which contains general terms and conditions governing the parties' relationship, "allows the parties to contract for multiple projects through the issuance of multiple Statements of Work without having to re-negotiate [those] general terms and conditions." (MSA 1.) The MSA provides that an SOW "becomes part of" the MSA once it is signed by both parties. (*Id.*)

The MSA also contains a procedure for modifying existing SOWs:

> 1.3    Change Order to SOW. If the scope of work under an SOW changes, then the applicable SOW may be modified as provided in this section. If a

> required modification to an SOW is identified by Sunovian or by [Yourway], the identifying party will notify the other party in writing as soon as reasonably possible. [Yourway] will provide Sunovian with a change order to the SOW . . . containing a description of the required modifications and their effect on the scope, fees and timelines specified in the SOW . . . and will use reasonable efforts to do so within ten (10) business days of receiving or providing such notice, as the case may be. . . . [Yourway] will not commence work in accordance with the SOW Change Order until it is authorized in writing by Sunovian.

(MSA 1–2.) The MSA requires Yourway to invoice Sunovian "for all amounts properly due under an SOW in accordance with the fees and payment schedule set forth in the SOW." (*Id.* at 2.) "[I]n no event," the MSA states, "will the maximum aggregate amount payable to Service Provider under any SOW . . . exceed the maximum amount specified in such SOW." (*Id.*)

Yourway and Sunovian executed one such SOW on August 18, 2017. (Compl. ¶ 7.) Sunovion needed Yourway's courier services to conduct a year-long study of shipping lane temperatures. (*Id.* at ¶ 12.) Yourway agreed to ship small parcel or freight-sized shipments from three points of origin: Pennsylvania, London and Tokyo. (Compl. Ex. B ("SOW") 4–5.) The SOW includes two detailed charts listing the shipping origin and destination city and the budget for each shipment. (*Id.* at 4–8.) It expressly limits Sunovion's total payment for Yourway's services to $98,751.42. (*Id.* at 2.) The parties estimated that the study would span from October 1, 2017 to October 30, 2018. (*Id.* at 1.)

Meanwhile, Sunovian engaged another company—Elpro, Inc.—"to design the protocol for the study, provide the temperature data device, known as the Libero Device . . . , which would be shipped, and analyze the data." (Compl. ¶ 13.) Yourway

2

received the first draft of Elpro's protocol for the study on August 16, 2017.[1] Yourway learned "[a]fter it executed the [SOW]" that "Elpro would be responsible for directing Yourway as to the transportation requirements" for the study "and that Yourway would be responsible for the configuration of the Libero prior to shipment." (*Id.* at ¶ 14.) (*Id.* at ¶ 15.) Approximately one month after Yourway and Sunovian executed the SOW, Elpro altered the list of shipment origin and destination cities for the study. (*Id.* at ¶ 16.) Yourway received a final list of shipment origin and destination cities on September 13, 2017. (*Id.*)

Yourway started performing courier services for the study in October of 2017. (*Id.* at ¶ 17.) Each week, Yourway, Sunovion and Elpro had telephone conferences to discuss the shipments. (*Id.* at ¶ 18.) Yourway alleges that Sunovion, "in order to induce Yourway to continue shipments in excess of the not to exceed amount [in the SOW] . . . represented that change orders would be executed for all additional work." (*Id.* at ¶ 23.) Yourway continued performing "[i]n reliance on that promise" in excess of the not-to-exceed amount provided in the SOW. (*Id.* at ¶ 24.)

Yourway completed all 2017 shipments and sent invoices to Sunovion totaling $141,478. (*Id.* at ¶ 19.) Sunovion then cancelled the study and refused to pay Yourway, "contending that there were errors or missing data." (*Id.* at ¶¶ 20–21.) On September 27, 2018, Sunovion told Yourway it would pay $77,717, "with the express condition that it be accepted as full and final satisfaction of the services provided by Yourway." (*Id.* at ¶ 26.) When Yourway told Sunovian it would only accept the money as partial payment, Sunovion refused to pay. (*Id.*)

---

[1] The Complaint states that Yourway received the draft protocol on August 16, 2018. The Court assumes "2018" is a typographical error.

II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the complaint will survive defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 791.

III

To prevail on an unjust enrichment claim, Yourway must establish (1) benefits conferred on Sunovian by Yourway, (2) appreciation of such benefits by Sunovian and

(3) acceptance and retention of such benefits under such circumstances that it would be inequitable for Sunovian to retain the benefit without payment of value. *Mitchell v. Moore*, 729 A.2d 1200, 1203–04 (Pa. Super. Ct. 1999) (citations omitted).[2]

Unjust enrichment is generally inapplicable where the parties' relationship is founded on a written agreement or express contract. *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (citations omitted) ("Where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract 'fixes the value of the services involved,' there can be no recovery under a quantum meruit theory."). However, "an unjust enrichment claim may go forward if one party performs services wholly outside the scope of the contract." *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 687 (E.D. Pa. 2001), *aff'd*, 53 F. App'x 226 (3d Cir. 2002) (citing *Combustion Sys. Servs., Inc. v. Schuykill Energy Res., Inc.*, 1993 WL 523713 at *5 (E.D. Pa. Dec. 15, 1993)).

Sunovian argues that Yourway cannot state a claim for unjust enrichment because the SOW, which became part of the MSA once both parties signed it, governs the parties' relationship. Yourway does not dispute the existence or enforceability of

---

[2]  In their briefs, both parties apply Massachusetts law to Yourway's unjust enrichment claim, presumably because the MSA is expressly governed by Massachusetts law. *See* (Compl. Ex. A ("MSA") 16) ("The validity, interpretation and enforcement of this Agreement, matters arising out of or related to this Agreement or its making, performance or breach, and related matters shall be governed by the laws of the Commonwealth of Massachusetts without reference to choice of law doctrine.").
 Yourway has sufficiently alleged that the services it provided to Sunovian that are the subject of its unjust enrichment claim are "outside the scope of the contract" it made with Sunovian. The Court will accordingly at this stage apply the law of the forum state, rather than Massachusetts law, to the unjust enrichment claim. *See Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007), *as amended* (July 19, 2007), *as amended* (Nov. 23, 2007) ("[A] federal court must apply the substantive laws of its forum state in diversity actions."). In any event, neither the Court nor the parties have identified a distinction between Pennsylvania and Massachusetts law with respect to a cause of action for unjust enrichment. *See, e.g.*, *Mitchell v. Moore*, 729 A.2d 1200, 1203–04 (Pa. Super. Ct. 1999); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 472 (D. Mass. 2018).

5

the SOW or the MSA, but rather contends that it conferred benefits on Sunovian, at Sunovian's request, "beyond what was contemplated by the express terms of the Statement of Work"—thus "outside the scope of the contract." (Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Mem.") 5–6, ECF No. 8.)

Yourway's allegations plausibly give rise to a claim for unjust enrichment. According to Yourway, after the parties executed the SOW, Sunovian requested services outside the scope of their contract. Those services allegedly cost Yourway $141,478 in 2017 alone, far more than the not-to-exceed amount provided in the SOW for a year-long study. To dismiss an unjust enrichment claim, the Court "must first find that the contracts entered by the parties at the beginning of the Project encompass the work that is the subject of [the] claim." *HCB Contractors v. Rouse & Assocs., Inc.*, 1992 WL 176142 at *7 (E.D. Pa. July 13, 1992). The Court is unable to make that finding at this stage of the case. *See, e.g.*, *Barlee v. First Horizon Nat. Corp.*, 2013 WL 706091 at *6 (E.D. Pa. Feb. 27, 2013) (denying motion to dismiss unjust enrichment claim where the Court could not yet determine whether mortgage documents encompassed the subject of the claim); *Johnson & Wood, LLC v. Pepco Energy Servs., Inc.*, 2012 WL 13009215 at *3 (M.D. Pa. June 18, 2012) ("Because there has not yet been discovery related to the scope of the Contract, we find that it would be premature to dismiss the . . . unjust enrichment claim[ ]."); *Combustion Sys. Servs., Inc.*, 1993 WL 523713 at *5.

Sunovian's motion to limit damages to the not-to-exceed amount provided in the SOW likewise fails. If Yourway can establish that Sunovian was unjustly enriched, it

may be entitled to recover more than Sunovian agreed to pay for the specific services outlined in the SOW.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.